# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

JAMES LEE LISTER

*Plaintiff,*

vs.

Case No. 17-01204-EFM

WESTERN INDUSTRIES CORPORATION

*Defendant.*

## MEMORANDUM AND ORDER

Plaintiff James Lee Lister, proceeding pro se, claims that Western Industries Corporation ("Western") discriminated against him because of his race in violation of 42 U.S.C. § 1981. Before the Court are the parties' respective motions for summary judgment. Lister also moves the Court to strike some of the evidence submitted by Western. For the reasons explained below, the Court denies the Motion for Summary Judgment by Plaintiff James Lee Lister (Doc. 87), grants the Motion for Summary Judgment by Defendant Western Industries Corporation (Doc. 88), and grants the Motion to Strike [95-1] Exhibit A: Scott Declaration by Plaintiff James Lee Lister (Doc. 97).

## I. Factual and Procedural Background

### A. Local Rules for Summary Judgment

In addition to the Federal Rules of Civil Procedure, the District of Kansas Local Rules set forth specific requirements for summary judgment motions. Under D. Kan. Rule 56.1, a memorandum in support of a motion for summary judgment "must begin with a section that contains a concise statement of material facts as to which the movant contends no genuine issue exists."[1] Furthermore, "[a]ll material facts set forth in the statement of the movant will be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party."[2] The rule further states that:

> A memorandum in opposition to a motion for summary judgment must begin with a section containing a concise statement of material facts as to which the party contends a genuine issue exists. Each fact in dispute must be numbered by paragraph, *refer with particularity to those portions of the record upon which the opposing party relies*, and if applicable, state the number of movant's fact that is disputed.[3]

Lister is proceeding pro se, and the Court must afford him some leniency in his filings.[4] A pro se litigant, however, is still expected to "follow the same rules of procedure that govern other litigants."[5] Here, Western's statement of facts contained 50 paragraphs of facts with citations to the record. Lister's Response opposing summary judgment objects to many of Western's facts, but Lister fails to controvert Western's facts with citations to the record. Some of Lister's

---

[1] D. Kan. Rule 56.1(a).

[2] D. Kan. Rule 56.1(a).

[3] D. Kan. Rule 56.1(b)(1) (emphasis added).

[4] *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007).

[5] *Id*.

objections simply challenge the admissibility of Western's evidence or argue that the evidence cited does not support the stated fact. Furthermore, the statement of facts contained in Lister's Motion for Summary Judgment contains very few citations to the record. It is not the Court's responsibility to scour the record on Lister's behalf to seek evidence contradicting Western's facts or supporting Lister's facts.[6] To the extent that a statement of fact by Western cites admissible evidence that supports its contention, the Court deems those facts admitted.

**B.     Facts**

In October 2015, Lister (who is black) was hired by Manpower, a national staffing service that connects temporary workers with employers. In November 2015, Manpower assigned Lister to a temporary position with Western as a Laborer/Saw Operator in Wichita, Kansas.[7] Western's temporary workers were assigned to various jobs, including working on a saw crew, which involved using a large saw machine to cut wood and stack it on a pallet. The saw operator is responsible for operating the machine from the control panel. Due to the size of the machine, the saw operator cannot determine whether a worker or debris is near the saw blade—which is located in the machine's middle section—while standing at the control panel. For that reason, the saw operator is required to yell "clear" before starting the saw. One of the other members of the saw crew is required to visually inspect the saw area and yell "clear" or "all clear" in response. According to Western's safety policies and procedures, workers must walk around the machine to ensure the saw is free of debris and clear of workers before giving the "all clear." Western's

---

[6] *Oakview Treatment Centers of Kansas, Inc. v. Garrett*, 53 F. Supp. 2d 1184, 1193 n. 8 (D. Kan. 1999).

[7] Lister's work assignment, although temporary, did not have a preordained end date. Western would sometimes hire its temporary workers as full-time employees, but full-time employment was not guaranteed. Lister indicates that it was his desire to be offered full-time employment with Western.

supervisors emphasized this safety protocol during training, and Lister received this training his first day on the job.

On January 19, 2016, Lister was assigned to a saw crew with two other temporary workers, Edward Huckabey (who is white) and John Cooper. Huckabey was the saw operator. Around noon, the saw crew stopped the machine to perform maintenance on the saw blade. After concluding the maintenance, Huckabey returned to the machine's control panel and either yelled "clear?" or "are you guys ready?" Lister responded, "all clear." But Lister, who standing on the opposite side of the machine as the control panel, did not walk around the machine to verify that the saw blade in the middle of the machine was, in fact, clear. When Huckabey turned on the saw he immediately heard Cooper shout and turned off the saw. Cooper was still in the middle of the machine and the blade cut Cooper's boot but did not cause any physical injury to Cooper.

James Glennie, the plant manager, was in his office during the incident and approached the saw crew to determine what happened. Glennie states in a sworn declaration that he asked Lister if he walked around the machine to ensure that the saw was safe to turn on before yelling "clear." According to Glennie, Lister responded, "I guess not." According to Lister, he told Glennie that when he yelled "all clear" he was referring to the back of the saw area only. Glennie also stated that it was his perception that Huckabey was visibly shaken following the incident while Lister appeared to be indifferent and unsympathetic.

The parties offer slightly different versions of what happened next. According to Western, Glennie then told Lister to clock out and leave the premises. Huckabey then requested an additional conversation with Glennie in his office, during which Huckabey explained that he followed safety protocol by relying on Lister's statement that the machine was clear. Glennie then confirmed with another worker, Kayla Brown, who was working nearby, that Lister gave the "all

clear" before Huckabey turned the saw on.  Having confirmed that Lister was the only worker who violated safety protocol, Glennie contacted Manpower and told them to end Lister's temporary assignment with Western.  Glennie did not request that Manpower end Lister's employment with Manpower.

According to Lister, Glennie initially stated something to the effect of "that's a safety violation" and "I'm going to have to fire you both."  Lister states that Huckabey told Glennie that he could not be fired because he had a family to support.  Glennie then told Huckabey to stay and they would talk in the office.  When Lister told Glennie that he also had a family to support, Glennie maintained that Lister was fired and encouraged him to leave.

Both parties filed a motion for summary judgment on Lister's sole remaining claim: race discrimination in violation of 42 U.S.C. § 1981.  Western's Motion argues that it is entitled to judgment as a matter of law for two reasons, argued in the alternative.  First, Western argues that Manpower, not Western, is Lister's employer and that Western should not be treated as Lister's employer under the Tenth Circuit's joint-employer test.  Second, Western argues that Lister fails to meet his burden to show that he suffered an adverse employment action and that Western's legitimate, non-discriminatory reason for its actions was pretext for race discrimination.  Lister's Motion includes an argument section that states the legal standard for summary judgment, provides legal authority addressing basic elements of a § 1981 claim, and discusses Lister's efforts to mitigate his damages by applying for jobs after leaving Western.  Other than citations to legal authority, Lister's Motion does not provide any analysis for why Lister is entitled to judgment as a matter of law.

Lister's Response to Western's Motion asks the Court to strike from the record any statements made by Huckabey and Brown on the basis that these comments constitute

impermissible hearsay. Additionally, Lister separately filed a Motion to Strike a Declaration by Ezra Scott, Manpower's Business Process Owner. Western's Motion for Summary Judgment attached as an exhibit business records from Manpower that, Western asserts, shows that Manpower offered Lister other work assignments after his position with Western that Lister turned down. Lister, however, argues that the business records do not actually reflect that Lister was offered these positions. He argues they only reflect that Lister applied for more jobs with Manpower. To rebut Lister's contention, Western's Reply included the Scott Declaration, which states that in 2018 Manpower offered Lister a temporary position that Lister turned down. Lister now argues that the Court should strike the Scott Declaration because it was provided after the close of discovery, it is vague, and it violates the sham affidavit doctrine.

The Court has reviewed the record and the parties' pleadings on all three pending motions. The Court now rules as follows.

## II. Legal Standard

### A. Summary Judgment

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[8] A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.[9] The movant bears the initial burden of proof, and must show the lack of evidence on an essential element of the

---

[8] Fed. R. Civ. P. 56(c).

[9] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).

claim.[10] The nonmovant must then bring forth specific facts showing a genuine issue for trial.[11] These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits—conclusory allegations alone cannot survive a motion for summary judgment.[12] The Court views all evidence and reasonable inferences in the light most favorable to the party opposing summary judgment.[13]

## III. Analysis

### A. Lister's Motions to Strike

As a preliminary matter, Lister's Response to Western's Motion for Summary Judgment requests that the Court strike any statement made by Kayla Brown and Edward Huckabey on the basis that such statements are inadmissible hearsay. The Response also asked the Court to strike James Glennie's Declaration because it contained hearsay and violated the sham affidavit doctrine. Lastly, Lister filed a separate Motion to Strike Ezra Scott's Declaration, which Western attached to its Reply, on the basis that it was untimely, vague, and in violation of the sham affidavit doctrine.

Under Federal Rule of Evidence 801(c), " 'Hearsay' means a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement."[14] James Glennie's Declaration states that following the January 19 incident, Glennie spoke with both Huckabey and Brown.

---

[10] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

[11] *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005).

[12] *Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[13] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

[14] Fed. R. Evid. 801(c)(1)–(2).

Glennie states that Huckabey gave him basic information about the incident, including that Huckabey yelled "clear" asking for the responsive "all clear" to let him know it was safe to turn on the saw, that he received the "all clear" from Lister, that Huckabey turned on the saw, and that he hurriedly turned off the saw after he heard Cooper shouting. Glennie states that Brown, who was working nearby, informed Glennie that she heard Lister give the "clear" signal before Huckabey turned on the machine.

Western argues that Huckabey and Brown's statements are not hearsay because they are not offered to prove the truth of the matter asserted: that Lister yelled "all clear" before Huckabey started the machine. Indeed, Lister's own deposition testimony establishes this fact. Rather, the purpose of Huckabey and Brown's statements is to show Glennie's state of mind when he decided to end Lister's temporary assignment and to keep Huckabey on the job. The Court agrees with Western that statements by Huckabey and Brown are not hearsay.[15] Thus, Lister's request to strike them is denied.

Lister also requests that the Court strike James Glennie's Declaration. Lister argues that Glennie's declaration contains hearsay and is not based on personal knowledge; he also indicates that Glennie's affidavit runs afoul of the sham affidavit doctrine. Lister does not indicate which statements contained in Glennie's affidavit he objects to based on lack of personal knowledge. As the Court already indicated, Glennie's inclusion of statements by Huckabey and Brown are not hearsay because they are not offered to prove the truth of the matter asserted in those statements.

---

[15] *See Bideau v. Beachner Grain, Inc.*, 2011 WL 4048961, at *10 (D. Kan. 2011) (explaining that when a plaintiff's supervisor's affidavit included comments he received from the plaintiff's coworkers and potential customers stating that the plaintiff was "difficult to work with" or "incapable of dealing with customers," these statements were not hearsay because they were not offered to prove that plaintiff was, in fact, difficult to work with or incapable of dealing with customers; rather, they were offered to show the supervisor's state of mind when he decided to fire the plaintiff).

With regard to the sham affidavit doctrine, this doctrine "is based on the premise that courts may disregard an affidavit that conflicts with an affiant's prior sworn statements if circumstances show the affiant is merely seeking to create a sham dispute by contradicting his own testimony."[16] Courts generally apply this doctrine "only in clear and extreme circumstances, such as where an affidavit is flatly contrary to the affiant's prior testimony."[17] Here, Lister does not provide any prior sworn testimony by Glennie that he later contradicts. Thus, the Court finds no reason to strike Glennie's Declaration.

Finally, Western's Reply to its Motion for Summary Judgment included a Declaration by Ezra Scott, Manpower's Business Process Owner. Scott stated that Manpower offered Lister a work assignment in 2018, thereby contradicting the position that Lister takes in his Response that Manpower never offered Lister another work assignment after Western ended his position. Lister filed a separate Motion to Strike the Scott Declaration, arguing that Western failed to submit the declaration in accordance with the Court's discovery deadlines, that the Scott Declaration was impermissibly vague, and that the Declaration violated the sham affidavit doctrine.

Western agrees with Lister that the Scott Declaration was submitted after the close of discovery. Western argues, however, that the Scott Declaration falls within the documents and witnesses disclosed during discovery because Western's Supplemental Rule 26 Disclosures to Lister stated that it would rely on "Plaintiff's employment records produced by custodians or records in response to Defendant's business records subpoenas" and "[a]ll witnesses necessary for rebuttal or impeachment." Western argues that the Scott Declaration simply rebutted the position

---

[16] *Raymond v. Spirit Aerosystems Holdings, Inc.*, 2018 WL 6602230, at *17 (D. Kan. 2018) (citing *Franks v. Nimmo*, 719 F.2d 1230, 1237 (10th Cir. 1986)).

[17] *Id.* (quotation marks omitted).

that Lister took in his Response that Manpower never offered him another work assignment. Western's Response, however, simply cites the docket entry where Western certified that it served its Supplemental Rule 26(a) Disclosures to Lister. The docket entry does not include the disclosures, and Western did not attach them to its Response. So, Western's Supplemental Rule 26(a) Disclosures are not available for the Court to review. Additionally, Western's purpose in attaching the Scott Declaration is to show that Manpower offered Lister a temporary work assignment in 2018; Western argues that this demonstrates that Lister did not suffer an adverse employment action. As the Court will explain below, even if Manpower did offer Lister another work assignment in 2018, Lister can still show that he suffered an adverse employment action. Meaning, whether Western offered Lister a work assignment in 2018 is not a material fact. For that reason—as well as Western's failure to attach a copy of its supplemental disclosures—the Court will not consider the Scott Declaration in making its ruling.

**B.     Western's Motion for Summary Judgment**

Lister has a single claim against Western for race discrimination in violation of 42 U.S.C. § 1981. Western and Lister have filed cross-motions for summary judgment. The Court elects to analyze Western's motion first. Western asserts two reasons, argued in the alternative, for why summary judgment is appropriate. First, Western asserts that it was not Lister's employer under the Tenth Circuit's joint-employer test and therefore cannot be held liable under § 1981. Second, Western argues that even if it was Lister's employer, Lister has failed to demonstrate, using the burden-shifting framework articulated in *McDonnell Douglas Corporation v. Green*,[18] that he was discriminated against because of his race. Because the Court determines that Western

---

[18] 411 U.S. 792 (1973).

is entitled to summary judgment based on Lister's failure to meet his burden under *McDonnell Douglas*, the Court declines to consider Western's alternative argument that it was not Lister's joint-employer.

In the absence of direct evidence of race discrimination,[19] Lister must rely on the burden-shifting framework outlined by the Supreme Court in *McDonnell Douglas*.[20] Under this familiar framework, the initial burden rests on Lister to make a prima facie case of race discrimination. If Lister successfully establishes a prima facie case, the burden then shifts to Western to come forward with a legitimate, non-discriminatory rationale for its adverse employment decision.[21] If Western proffers a non-discriminatory rationale, the burden shifts back to Lister to show that the proffered rationale was pretextual.[22] Importantly, although "the burden of production shifts from the plaintiff to the defendant and back to the plaintiff," it is the plaintiff who "bears the ultimate burden of persuasion to show discrimination."[23]

To make a prima facie case of race discrimination, Lister must demonstrate that (1) he belongs to a protected class; (2) he suffered an adverse employment action; and (3) the adverse action took place under circumstances giving rise to an inference of discrimination.[24] Western

---

[19] *See Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1117 (10th Cir. 2007) ("Direct evidence is evidence, which if believed, proves the existence of a fact in issue without inference or presumption.").

[20] 411 U.S. 792 (1973).

[21] *DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 969–70 (10th Cir. 2017).

[22] *Id.* (internal citations omitted).

[23] *Id.* at 969.

[24] *Bird v. Regents of New Mexico State Univ.*, 619 F. App'x 733, 741 (10th Cir. 2015) (quoting *EEOC v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007)).

argues that Lister cannot make a prima facie case of discrimination because he never suffered an adverse employment action.

   1.   *Adverse employment action*

Western argues Lister never suffered an adverse employment because after Western ended Lister's temporary assignment, Lister "had the same opportunities that he previously had to accept additional assignments from Manpower." Furthermore, Western states that Manpower subsequently offered Lister new assignments that Lister turned down. Lister, conversely, asserts that he was never offered another assignment by Manpower following his assignment with Western.

"The Supreme Court has stated that employer conduct is adverse employment action if it 'constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.' "[25] The Tenth Circuit "liberally defines the phrase 'adverse employment action.' . . . [and takes] a case-by-case approach, examining the unique factors relevant to the situation at hand."[26]

Here, Western argues that Lister did not suffer an adverse employment action because he could continue to accept work assignments from Manpower. Indeed, Western argues that the uncontroverted evidence demonstrates that Manpower provided Lister with additional work opportunities and that it was Lister who turned them down. To support this assertion, Western attached to its Motion an exhibit containing two pages of business records from Manpower.

---

[25] *Couture v. Belle Bonfils Mem'l Blood Ctr.*, 151 F. App'x 685, 689–90 (10th Cir. 2005) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)).

[26] *Id.* (citations and quotations omitted).

Although Western attached a Declaration from Manpower's Custodian of Employment Records, Dawn Spratz, certifying the authenticity of the business records, Western provides no evidence explaining the information therein.

The first page is a computer screenshot purporting to show Lister's "Advert Responses." It provides information regarding 15 job assignments that Lister either applied for or was offered. According to the dates provided in this exhibit, 13 of the assignments were posted before Lister worked for Western and are therefore irrelevant to this Court's inquiry. The other two jobs were posted on June 11 and 22, 2018. The exhibit includes information on the job's "Status." The June 11 job's status states "Rejected." And the June 22 job's status states "Not Yet Qualifie[d]."

The second page is another computer screenshot purporting to show Lister's "Submittals." In addition to showing that Lister was "Assigned" to work for Western on November 25, 2015, this page also shows the "Submittal Status" of two jobs posted on December 20, 2016 as "Rejected." Western argues that these records demonstrate that Manpower offered Lister work assignments after his position with Western ended in January 2016.

Lister disputes that he was offered or declined any of the job assignments listed in Western's exhibit. Rather, Lister contends that this list reflects jobs for which he applied. Lister states that "[M]anpower never offered plaintiff other assignments after [his position with Western ended]," but Lister does not cite any admissible evidence in support of this contention. In its Reply, Western attaches a Declaration from Manpower's Business Process Owner, Ezra Scott, who states: "In 2018, Manpower offered a temporary employment position to James Lister and he turned it down."

Construing the facts in the light most favorable to Lister, the Court concludes that Lister has adequately met his burden to demonstrate a prima facie case. The Court is unpersuaded by

Western's argument that its decision to end Lister's temporary assignment was not an adverse employment action because Manpower subsequently offered Lister another position. As an initial matter, the evidence attached to Western's Motion, when viewed in Lister's favor, does not support Western's contention that Lister received and declined additional work opportunities from Manpower. The evidence merely states that the job was "Rejected" without explaining whether it was Lister, Manpower, or the client who made that decision. Given that this evidence is open to interpretation, it does not support Western's push for summary judgment.

The Scott Declaration, however, does state that Manpower offered Lister an assignment sometime in 2018 and that Lister declined the assignment. But as the Court discussed above, because Western failed to attach a copy of the its Supplemental Rule 26 Disclosures, the Court cannot determine whether Western gave Lister fair notice that it would rely on the Scott Declaration. More importantly, even if the Court deems it uncontroverted that Manpower offered Lister a work assignment sometime in 2018, this fact would not entitle Western to a judgment as a matter of law. The uncontroverted facts show that Lister joined Western as a temporary worker, that Lister's position did not have a preordained end date, that Western sometimes hires temporary workers as full-time employees, that Lister hoped to be hired on a full-time basis, and that Western ended Lister's assignment earlier than planned. Assuming Western was Lister's joint-employer—a matter that Western disputes and the Court does not decide—then Western's decision to end Lister's position would constitute a significant change in employment status. That Lister could have sought additional work opportunities from Manpower does not undermine that fact, and neither does the fact that Manpower offered Lister another temporary job more than two years after his departure from Western. The Court concludes that Lister has adequately demonstrated that he suffered an adverse employment action.

*2. Pretext*

Under the next step of the *McDonnell Douglas* framework, Western is given the opportunity to articulate a legitimate, non-discriminatory reason for its decision to end Lister's position. Western proffers that it made its decision because Lister violated Western's safety policies and procedures. Thus, the burden is on Lister to demonstrate that Western's explanation was pretextual.

"To survive a motion for summary judgment at the pretext step, the plaintiff must present evidence to establish there is a genuine issue of material fact as to whether the defendant's articulated reason for the adverse employment action was pretextual."[27] The plaintiff can demonstrate pretext by offering evidence that the proffered reason is "factually false" or that discrimination was a "primary factor" in the decision.[28] This can be accomplished "by revealing weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered reason, such that a reasonable fact finder could deem the employer's reason unworthy of credence."[29] "A common method of showing pretext is by arguing disparate treatment."[30] Under this approach, the plaintiff must show "that the employer treated the plaintiff differently from other similarly-situated employees who violated work rules of comparable seriousness."[31] It is not the Court's place, however, to "second guess the business judgment of the employer."[32]

---

[27] *DePaula*, 859 F.3d at 970 (citations omitted).

[28] *Id.* (citations and quotations omitted).

[29] *Id.* (citations and quotations omitted).

[30] *Herrera v. United Airlines, Inc.*, 754 F. App'x 684, 692 (10th Cir. 2018).

[31] *Id.* (citation, alterations, and quotations omitted).

[32] *DePaula*, 859 F.3d at 970 (citation and quotations omitted).

Evidence that the employer was mistaken about the relevant facts or used poor business judgment is not sufficient to show that the employer's proffered reason is unworthy of belief.[33] "Instead of asking whether the employer's reasons 'were wise, fair or correct,' the relevant inquiry is whether the employer 'honestly believed those reasons and acted in good faith upon those beliefs.' "[34]

Here, Lister's Response provides no legal analysis on the issue of pretext other than citing the applicable legal standards. Upon review of Lister's Response as well as his other pleadings and corresponding attachments, the Court gleans two arguments that Lister appears to rely on in arguing that Western's proffered reason was pretextual. First, Lister appears to argue that Western's proffered reason is factually false: meaning. Lister did not, in fact, violate Western's safety protocols. Second, Lister appears to argue that Western was more lenient with Huckabey—a similarly-situated white employee who made a comparable safety violation—than it was with Lister.

Under the first argument, Lister indicates that he did not violate Western's safety protocols because when he yelled "all clear" his intention was to clear "his area" only, not the whole machine. What Lister intended, however, is irrelevant. Western has provided uncontroverted evidence that its safety protocols mandate that only workers who have walked around the machine to verify that no person or debris is in the saw area are permitted to yell "all clear."[35] By his own

---

[33] *Id.* at 970–71 (citation omitted).

[34] *Id.* at 971 (quoting *Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1170 (10th Cir. 2007)).

[35] The Court notes that when Lister responded to Western's statement of uncontroverted facts, at one point he denied that Western's safety policies imposed this requirement. Doc. 91 at 4. But at another point, he admitted that Western's supervisors emphasized this protocol during training. Doc. 91 at 5. This apparent inconsistency notwithstanding, Lister offers no admissible evidence controverting Western's position that no worker should give the "all clear" without first checking the entire machine.

admission, Lister did not abide by this protocol. Thus, the Court holds that Western's stated reason for dismissing Lister was not factually false.

The second argument that Lister appears to make is that a similarly-situated white employee received no punishment for the January 19 incident. Lister argues that Huckabey was equally responsible for the safety violation because he failed to observe Cooper near the blade before turning on the saw. But Western has provided evidence that Huckabey, as the saw operator, was stationed at the saw's control panel. Western also provided evidence that when standing at the control panel, the saw operator cannot see if a worker is near the saw blade.[36] For that reason, Western's safety protocol required that the saw operator confirm with a coworker that no person was near the saw blade before turning on the machine. Thus, Huckabey and Lister had different obligations under Western's safety protocols. Huckabey, as the saw operator, was obligated to receive confirmation from another worker that the saw blade was clear before turning the machine on. Whereas Lister was obligated to visually inspect the saw to ensure that no worker was in harm's way before giving confirmation that the machine was "all clear."

The Court acknowledges that Lister, in his Motion for Summary Judgment, attempted to introduce evidence that the saw operator was required to observe the saw area before turning on the blade. Lister presented this evidence in the form of a questionnaire that appears to have been created by Lister and responded to by Ira Steele, who purportedly worked with Lister and Huckabey at Western. Steele makes a general comment that Huckabey violated protocol by failing

---

[36] Although Lister suggests at various points that Huckabey could have easily seen Cooper from the control panel, Lister admits in his deposition testimony that the saw operator would have to take approximately five steps away from the control panel to see where Cooper was standing. Rather than requiring the saw operator to leave the control panel before turning on the saw, Western implemented a protocol in which the saw operator would rely on his fellow workers.

to observe the saw area before turning on the machine. Steele also makes a conclusory comment that Glennie treated black workers "less than others."[37] The Steele questionnaire, however, is not admissible evidence under the Court's local rules[38] and the Court therefore excludes it.[39] The admissible evidence shows that Huckabey followed Western's safety protocol and Lister did not. Therefore, Western's decision not to punish Huckabey does not demonstrate that Western's proffered reason for punishing Lister was pretext for race discrimination.

The Court concludes that Lister has failed his burden under the *McDonnell Douglas* framework to show that Western's proffered reason for ending his assignment with the company was pretext for racial discrimination. The Court therefore grants Western's Motion for Summary Judgment. Because of this ruling, the Court need not separately consider Lister's cross-motion for summary judgment and denies it as moot.

**IT IS THEREFORE ORDERED** that Plaintiff James Lee Lister's Motion to Strike (Doc. 97) is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendant Western Industries Corporation's Motion for Summary Judgment (Doc. 88) is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff James Lee Lister's Motion for Summary Judgment (Doc. 87) is **DENIED AS MOOT.**

---

[37] *See Brooks v. Holiday Healthcare, L.L.C.*, 2008 WL 4499986, at *10 (D. Kan. 2008) (explaining that conclusory statements based on personal opinions rather than substantiated facts are not worthy of the Court's consideration at Summary Judgment).

[38] *See* D. Kan. Rule 56.1(d) ("[F]acts on which a motion or opposition is based must be presented by affidavit, declaration under penalty of perjury, and/or relevant portions of pleadings, depositions, answers to interrogatories, and responses to requests for admissions.").

[39] *See Reed v. Simmons*, 2004 WL 955355, at *2 n. 7 (D. Kan. 2004) (excluding evidence that fails to comply with Rule 56.1(d)'s requirements).

**IT IS SO ORDERED**.

Dated this 23rd day of October, 2019.

This case is now closed.

ERIC F. MELGREN<br>
UNITED STATES DISTRICT JUDGE